## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

MAZDAK POURABDOLLAH
TOOTKABONI and
ARGHAVAN LOUHGHALAM,

          *Petitioners*,

             v.

DONALD TRUMP, President of the United
States; U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"); U.S.
CUSTOMS AND BORDER PROTECTION
("CBP"); JOHN KELLY, Secretary of DHS;
KEVIN K. MCALEENAN, Acting
Commissioner of CBP; and WILLIAM
MOHALLEY, Boston Field Director, CBP,

          *Respondents*.

Case No. 17-cv-10154

Date: January 28, 2017

## PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Petitioners Mazdak Pourabdollah Tootkaboni and Arghavan Louhghalam, two lawful permanent residents of United States, are being unlawfully held at Logan Airport as a consequence of an Executive Order recently issued by President Donald Trump. Both Petitioners are associate professors at the University of Massachusetts-Dartmouth, Iranian nationals, and Muslims. Both Petitioners landed at Logan at approximately 5:30 p.m. on January 28, 2017, and, on information and belief, have been detained since then. They were returning from an academic conference and was outside the United States for fewer than 180 days.

As lawful permanent residents, and as set forth in detail below, Petitioners have a constitutional right to return home to the United States after a brief trip abroad, and cannot be deprived of their lawful permanent status without justification and due process protections.

Even though Petitioners were returning home to the United States as lawful permanent residents, U.S. Customs and Border Protection ("CBP") blocked them from exiting Logan and detained them therein. No magistrate has determined that there is sufficient justification for the continued detention of Petitioners.  Instead, CBP is holding them at Logan solely pursuant to an executive order issued by President Donald Trump on January 27, 2017.

Because the executive order is unlawful as applied to Petitioners, their continued detention based solely on the executive order violates his Fifth Amendment procedural and substantive due process rights, violates the First Amendment Establishment Clause, is ultra vires under the immigration statutes, and violates the Administrative Procedure Act and Religious Freedom Restoration Act. Further, Petitioners' continued unlawful detention is part of a widespread policy,

pattern, and practice applied to many refugees and arriving aliens detained after the issuance of the January 27, 2017 executive order. Therefore, Petitioners respectfully apply to this Court for a writ of habeas corpus to remedy his unlawful detention by Respondents, and for declaratory and injunctive relief to prevent such harms from recurring.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1361, 2241, 2243, and the Habeas Corpus Suspension Clause of the U.S. Constitution. This court has further remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

2.      Venue properly lies within the District of Massachusetts because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

3.      No petition for habeas corpus has previously been filed in any court to review Petitioner's case.

## PARTIES

4.      Petitioner Tootkaboni is an Iranian national and a lawful permanent resident of the United States. He is an Associate Professor at the University of Massachusetts-Dartmouth.

5.      Petitioner Louhghalam is an Iranian national and a lawful permanent resident of the United States. She is an Associate Professor at the University of Massachusetts-Dartmouth.

6.      The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States.

7.      U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

8.      Respondent John Kelly is the Secretary of DHS.  Secretary Kelly has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

9.      Respondent Kevin K. McAleenan is the Acting Commissioner of CBP. Acting Commissioner McAleenan has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

10.      Respondent James T. Madden is the Director of the New York Field Office of CBP, which has immediate custody of Petitioners and other members of the proposed class.  He is sued in his official capacity.

11.      Respondent Donald Trump is the President of the United States.  He is sued in his official capacity.

## STATEMENT OF FACTS

### President Trump's January 27, 2017 Executive Order

12.      On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.  During his campaign, he stated that he would ban Muslims from entering the United States.

13.      On January 27, one week after his inauguration, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," which is attached hereto as Exhibit A and is hereinafter referred to as the "EO."

14.     In statements to the press in connection with his issuance of the EO, President Trump stated that his order would help Christian refugees to enter the United States.

15.     Citing the threat of terrorism committed by foreign nationals, the EO directs a variety of changes to the manner and extent to which non-citizens may seek and obtain entry to the United States.  Among other things, the EO imposes a 120-day moratorium on the refugee resettlement program as a whole; proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States"; and therefore singles out Syrian refugees for an indefinite "suspension" on their admission to the country.

16.     Most relevant to the instant action is Section 3(c) of the EO, in which President Trump proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

17.     There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.  According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO.

**Petitioner Tootkaboni**

18.     Petitioner Tootkaboni is an Iranian national and a lawful permanent resident of the United States.

19.     Petitioner Tootkaboni is Muslim.

20.     Petitioner Tootkaboni joined the Department of Civil Engineering at the Johns Hopkins University in 2004 and earned his PhD degree in Structural Mechanics in May 2009

21.     Petitioner Tootkaboni is now an Associate Professor at the University of Massachusetts-Dartmouth.

22.     Petitioner Tootkaboni arrived at Logan Airport on January 28, 2017, following a trip out of the country to attend an academic conference.

23.     Petitioner Tootkaboni has been detained since that arrival.

24.     Counsel for Petitioner Tootkaboni have attempted to make contact with him at Logan Airport but have been unsuccessful due to Petitioner Tootkaboni's detention.

25.     Upon knowledge and belief, Petitioner remains in the custody of CBP at Logan Airport.

26.     Petitioner Tootkaboni is being detained at Logain Airport and not being permitted to go home, in violation of the U.S. law.

**Petitioner Louhghalam**

27.     Petitioner Louhghalam is an Iranian national and a lawful permanent resident of the United States.

28.     Petitioner Louhghalam is Muslim.

29.     Petitioner Louhghalam holds a Ph.D. and a M.S. in Engineering Mechanics from the Johns Hopkins University.

30.     Petitioner Louhghalam is now an Associate Professor at the University of Massachusetts-Dartmouth.

31.     Petitioner Louhghalam arrived at Logan Airport on January 28, 2017, following a trip out of the country to attend an academic conference.

32.     Petitioner Louhghalam has been detained since that arrival.

33.     Counsel for Petitioner Louhghalam have attempted to make contact with her at Logan Airport but have been unsuccessful due to Petitioner Louhghalam's detention.

34.     Upon knowledge and belief, Petitioner Louhghalam remains in the custody of CBP at Logan Airport.

35.     Petitioner Louhghalam is being detained at Logain Airport and not being permitted to go home, in violation of the U.S. law.

36.     Congress has provided that lawful permanent residents in Petitioners' situation are entitled to enter the United States.  Under 8 U.S.C. § 1101(a)(13)(C), a lawful permanent resident is regarded as seeking an admission into the United States for purposes of the immigration laws" only if he or she "has abandoned or relinquished that status," *id.* § 1101(a)(13)(C)(i), has been absent from the United States for more than 180 days continuously, is in removal proceedings, has committed one of a class of enumerated offenses, or has attempted to enter without inspection.

37.     None of the foregoing circumstances applies to Petitioners and therefore they are not deemed to be seeking admission and have a right to enter.  In *In re Collado–Munoz,* 21 I. & N. Dec. 1061, 1065-1066 (1998) (en banc) (requiring immigration judge to look to 8 U.S.C. § 1101(a)(13)(C) in determining whether lawful permanent resident was applicant for admission);

*Vartelas v. Holder*, 566 U.S. 257 (2012) (citing *In re Collado-Munoz* and recognizing that the definition supersedes previous statute's definition of entry).

38.     Respondents are also detaining Petitioners in violation of the Due Process Clause. In *Rosenberg v. Fleuti*, 374 U.S. 449, 462 (1963), the Supreme Court held that "an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been intended as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an entry into the country on his return." (internal quotation marks and citations omitted); *see also Kwong Hai Chew v. Colding*, 344 U.S. 590, 601-02 (1953) (assimilating status, for constitutional purposes, of lawful permanent resident who had been abroad for five months to that of one continuously present).   The Supreme Court reaffirmed this constitutional principle in *Landon v. Plasencia*, 459 U.S. 21, 31 (1982) (describing *Chew* as standing for the proposition that "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien").

39.     As a lawful permanent residents of the United States, Petitioners are attempting to return home.  They have been left in limbo while detained by the Respondents for no reason other than the discriminatory and unconstitutional EO

## CAUSES OF ACTION
## COUNT ONE
## FIFTH AMENDMENT – PROCEDURAL DUE PROCESS

40.     Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

41.     Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of the Fifth Amendment. Additionally, due process requires that arriving immigrants be afforded those statutory rights granted by Congress and the principle that "[m]inimum due process rights attach to statutory rights." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (alteration in original) (quoting *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996)).

42.     In particular, returning lawful permanent residents have constitutional due process rights with respect to their return to the United States. In evaluating the due process rights available to a lawful permanent resident, "courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

43.     Respondents' actions, taken pursuant to the EO, violate the procedural due process rights guaranteed by the Fifth Amendment.

### COUNT TWO
### FIRST AMENDMENT – ESTABLISHMENT CLAUSE

44.     Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45.     The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity. The EO therefore violates the Establishment

Clause of the First Amendment by not pursuing a course of neutrality with regard to different religious faiths.

## COUNT THREE
### FIFTH AMENDMENT – EQUAL PROTECTION

46.     Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

47.     The EO discriminates against Petitioners on the basis of their country of origin and religion, without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

48.     Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment. *Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 204 (2d Cir. 2006); *Hunter v. Underwood*, 471 U.S. 222 (1985).

49.     Respondents have demonstrated an intent to discriminate against Petitioners on the basis of religion through repeated public statements that make clear the EO was designed to prohibit the entry of Muslims to the United States. *See* Michael D. Shear & Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries,* N.Y. Times (Jan. 27, 2017), ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims."); Carol Morello, *Trump Signs Order Temporarily Halting Admission of Refugees, Promises Priority for Christians*, Wash. Post (Jan. 27, 2017).

50.     Applying a general law in a fashion that discriminate on the basis of religion in this way violates Petitioner's rights to equal protection under the Fifth Amendment Due Process

Clause. *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Petitioners satisfy the Supreme Court's test to determine whether a facially neutral law – in the case, the EO and federal immigration law – has been applied in a discriminatory fashion. The Supreme Court requires an individual bringing suit to challenge the application of a law bear the burden of demonstrating a "prima facie case of discriminatory purpose."*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-7 (1977). This test examines the impact of the official action, whether there has been a clear pattern unexplainable on other grounds besides discrimination, the historical background of the decision, the specific sequence of events leading up to the challenged decision, and departures from the normal procedural sequence. *Id.*

51.     Here, President Donald Trump and senior staff have made clear that EO will be applied to primarily exclude individuals on the basis of their national origin and being Muslim. *See*, *e.g.*, Donald J. Trump, *Donald J. Trump Statement On Preventing Muslim Immigration*, (Dec. 7, 2015), https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration ("Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."); Abby Phillip and Abigail Hauslohner, *Trump on the Future of Proposed Muslim Ban, Registry: 'You know my plans'*, Wash. Post (Dec. 22, 2016). Further, the President has promised that preferential treatment will be given to Christians, unequivocally demonstrating the special preferences and discriminatory impact that the EO has upon Petitioner. *See supra*.

52.     Thus, Respondents have applied the EO with forbidden animus and discriminatory intent in violation of the equal protection of the Fifth Amendment and violated Petitioner's equal protection rights.

## COUNT FOUR
## ADMINISTRATIVE PROCEDURE ACT

53.     Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     Respondents detained and mistreated Petitioners solely pursuant to an executive order issued on January 27, 2017, which expressly discriminates against Petitioners on the basis of their country of origin and was substantially motivated by animus toward Muslims. *See supra* Count Five.

55.     The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity.

56.     The INA forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A).

57.     The INA and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitle Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief.

58.    Respondents' actions in detaining and mistreating Petitioners were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of APA § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, in violation of APA § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of APA § 706(2)(C); and without observance of procedure required by law,  in violation of § 706(2)(D).

## COUNT FIVE
## RELIGIOUS FREDOM RESTORATION ACT

59.    Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60.    The EO will have the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing an important immigration benefit principally from Muslims on account of their religion. In doing so, the EO places a substantial burden on Petitioner's exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners prays that this Court grant the following relief:

(1)   Issue a Writ of Habeas Corpus requiring Respondents to release Petitioners;

(2)    Issue an injunction ordering Respondents not to detain any individual solely on the basis of the EO;

(3)   Enter a judgment declaring that Respondents' detention of Petitioners is and will be

unauthorized by statute and contrary to law;

(4)   Award Petitioners reasonable costs and attorney's fees; and

(5)   Grant any other and further relief that this Court may deem fit and proper.

DATED: January 28, 2017
Boston, Massachusetts

Respectfully submitted,

/s/ Derege Demissie

_____
Derege B. Demissie
Demissie & Church
929 Mass. Ave., Suite 101
Cambridge, MA 02139
(617) 354-3944

   /s/ Kerry E. Doyle
Kerry E. Doyle (BBO# 565648)
Graves & Doyle
100 State Street, 9th Floor
Boston, MA 02109
(617) 216-1248

     /s/ Susan Church
Susan Church
Demissie & Church
929 Mass. Ave., Suite 101
Cambridge, MA 02139
(617) 354-3944

    /s/ Matthew R. Segal
Matthew R. Segal (BBO# 654489)

14

Sarah Wunsch
Jessie J. Rossman
Laura Rotolo
Adriana Lafaille
ACLU Foundation of Massachusetts
211 Congress Street
Boston, MA 02110
(617) 482-3170
msegal@aclum.org