UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ARGHAVAN LOUHGHALAM AND MAZDAK POURABDOLLAH TOOTKABONI, *et al.* | ) ) ) ) ) |  |
| *Plaintiffs*, | ) ) |  |
| v. | ) ) | Civil Action No.: 17-cv-10154-NMG |
| DONALD J. TRUMP, *et al.* | ) ) |  |
| *Defendants*. | ) ) |  |

**OPPOSITION TO CONTINUATION OF TEMPORARY RESTRAINING ORDER**

Defendants, by and through counsel, hereby oppose the continuation of the Temporary Restraining Order ("TRO") entered on January 29, 2017 (ECF No. 6). The primary reason the Court should decline to extend the TRO is that, assuming the truth of the allegations in the Amended Complaint (ECF No. 28), the immediate need for the emergency relief Plaintiffs initially requested has evaporated.

In this case, the original named Plaintiffs challenged the executive order of January 27, 2017 titled "Protecting the Nation from Foreign Terrorist Entry into the United States," (ECF No. 2) (hereinafter, "the Order"), alleging they were unlawfully detained upon entry into this country on the basis of the Order. The resulting TRO thus addressed concerns of those affected by the Order who were either in airports in the United States or in transit. At this point, however, *all* of the named individual Plaintiffs are within the United States; none is alleged to be detained (mooting any claim for habeas relief); and most of them are not affected by the Order at all given the recent clarification that it does not apply to lawful permanent residents ("LPRs") (commonly

1

referred to as "green-card holders"). The free-speech claims of the organizational Plaintiff (that is, their wish to have others physically present to hear what they have to say) similarly do not represent the type of immediate and irreparable harm that warrants a TRO rather than consideration on a preliminary-injunction schedule.

Consequently, none of the Plaintiffs has alleged circumstances that would lead to substantial injury should the TRO expire. In short, there is no reason the Court cannot allow the emergency order to expire and consider the merits of a preliminary injunction on a slightly less expedited schedule. Such a plan would allow the Government to present full briefing on why Plaintiffs are unlikely to succeed on their claims challenging the Order, particularly in light of the longstanding judicial doctrines granting the political branches broad power to control the admission of aliens into the United States. *See, e.g.*, *Kerry v. Din*, 135 S. Ct. 2128, 2137 (2015); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

## BACKGROUND

The original Plaintiff-Petitioners, Messrs. Tootkaboni and Arghavan Louhghalam, natives and citizens of Iran, filed their petition for a writ of habeas corpus and complaint on January 28, 2017. (ECF No. 1; hereinafter, "Petition.") They alleged therein that the LPRs being unlawfully detained at Logan International Airport as a consequence of the Order. (Petition at 2.) The Order suspended the entry of immigrants and non-immigrants from "Countries of Particular Concern," including Iran, "for 90 days from the date of [the] order." Order at Section 3; *see also* 8 U.S.C. § 1187(a)(12)(D)(ii) (requiring the Secretary of Homeland Security to identify countries of concern based on "(I) whether the presence of an alien in the country or area increases the likelihood that the alien is a credible threat to the national security of the United States; (II) whether

a foreign terrorist organization has a significant presence in the country or area; and (III) whether the country or area is a safe haven for terrorists").

The President signed the Order at 4:48 p.m. (EST) on Friday, January, 27, 2017. That same day, the U.S. Department of State ("State Department") issued a letter provisionally revoking all visas of nationals of Libya, Iran, Iraq, Somalia, Sudan, Syria, and Yemen (subject to certain exceptions) under the authority of 8 U.S.C. §§ 1182(f), 1201(i), and 22 C.F.R. §§ 41.122, 42.82. (ECF No. 23.)

In their Petition, Plaintiff-Petitioners alleged that they arrived at Logan International Airport at approximately 5:30 p.m. (EST) on Saturday, January 28, 2017, and were held therein by U.S. Customs and Border Protection ("CBP") until at least the time their petition was filed. Petition at 2. The Court held a hearing on their request for a temporary restraining order at 11:34 p.m. that same evening. (ECF No. 17; Hearing Regarding Temporary Restraining Order, Tr. at 2:2 (Jan. 28–29, 2017)). At the time the hearing commenced, counsel for Petitioners acknowledged that their clients were no longer being held by CBP. (*Id.* at 7:1-2.) The Court nonetheless heard argument and on Sunday, January 29, 2017, granted Plaintiff-Petitioners' request for a TRO, and ordered Petitioners to file an amended complaint by January 30, 2017. (ECF No. 6). After seeking a two-day extension, Petitioners filed their Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, adding five individual Plaintiffs and one corporate Plaintiff. (ECF No. 28; hereinafter, "Amended Complaint" or "Am. Compl.")  Each new individual Plaintiff is currently present in the United States. *See* Am. Compl. at ¶¶ 68–111.) Three of the five new individual Plaintiffs are LPRs; the remaining two are in the United States in non-immigrant status. *See id.* The corporate Plaintiff, Oxfam America, Inc. ("Oxfam"), alleges that it regularly brings individuals from five of the seven countries of particular concern to the United

States to "obtain information from overseas colleagues" and "to speak with American governmental officials"; the Amended Complaint does not explain why those individuals cannot participate in meetings by telephone or videoconferencing. (*See* Am. Compl. at ¶¶ 112–21.)

On Wednesday, February 1, 2017, White House counsel issued guidance regarding the Order, clarifying that Section 3(c), which temporarily suspended the entry of immigrants and non-immigrants from the countries of particular concern, did not apply to LPRs. Specifically, the White House, in its "Memorandum to the Acting Secretary of State, the Acting Attorney General, and the Secretary of Homeland Security" (February 1, 2017), stated: "I understand that there has been reasonable uncertainty about whether those provisions apply to lawful permanent residents of the United States. Accordingly, to remove any confusion, I now clarify that Sections 3(c) and 3(e) do not apply to such individuals. Please immediately convey this interpretive guidance to all individuals responsible for the administration and implementation of the Executive Order." (hereinafter, "Defendants' Exhibit 1.")

## LEGAL STANDARDS

The standard for issuance of a temporary restraining order is the same as that for issuance of a preliminary injunction. *See, e.g.*, *Kilmowicz v. Deutsche Bank Nat'l Trust Co.*, — F. Supp. 3d —, 2016 WL 3541540, at *1 (D. Mass. June 23, 2016). In evaluating either, courts consider: (1) the likelihood of success on the merits, (2) the potential for irreparable harm, (3) the balance of hardships, and (4) whether an injunction is in the public interest. *178 Lowell St. Operating Co. v. Nichols*, 152 F. Supp. 3d 47, 53 (D. Mass. 2016) (Gorton, J.) (citing *Jean v. Mass. State Police*, 492 F.3d 24, 26–27 (1st Cir. 2007)). The moving party bears the burden of proof for each of these four factors.

Finally, preliminary injunctive relief is an extraordinary remedy never awarded as of right,

*Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008), and the party seeking such relief bears the burden of establishing its entitlement to an injunction. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"). A temporary restraining order expires unless the Court finds good cause to extend it, for a period not to exceed 14 days. Fed. R. Civ. P. 65(b)(2). Here, there has been no showing that the grounds for issuance of the Temporary Restraining Order continue to exist.

## ARGUMENT

Plaintiffs cannot show good cause to extend the TRO. This is because Plaintiffs have not demonstrated the potential for irreparable harm, at least not pending briefing on a preliminary injunction. This Court has previously explained that "[i]rreparable harm is 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'" *Hearst Stations, Inc. v. Aereo, Inc.*, 977 F. Supp. 2d 32, 40 (D. Mass. 2013) (Gorton, J.) (quoting *Ross-Simons of Warwick v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996)). The First Circuit has stated that Plaintiffs' allegations of irreparable harm must not be an "overly speculative forecast of *anticipated* harm." *Baccarat*, 102 F.3d at 19.

Even if the circumstances surrounding Petitioner-Plaintiffs' entry into the United States on January 28, 2017 was, at that time, an injury sufficient to meet the First Circuit's standard for irreparable harm, that is no longer the case. In this case, the individual Plaintiffs are all within the United States. Plaintiffs argue that they will be irreparably harmed by the Order because their travel plans outside of the country may now be impeded. The first problem with this argument is that most of the Plaintiffs are LPRs—whose claims are now entirely moot because they are not

covered by the Order. (*See* Defendants' Exhibit 1.) This development effectively means that any decision by the Court regarding those LPR Plaintiffs would be "strictly advisory." *Cambridge Taxi Drivers & Owners Ass'n, Inc. v. City of Cambridge*, 2017 WL 373491, at *3 (D. Mass. Jan. 25, 2017) (Gorton, J.); *see also New Eng. Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002) (noting how it is "pointless" to pass on constitutional issues when a disputed policy was revised during litigation). Put simply, there is no risk that the Order will impede the LPR Plaintiffs' entry into the United States in the future.

Furthermore, only two plaintiffs (Mses. Renani and Amirsardary) have any specific intentions of making such a trip outside of the United States. (*See* Am. Compl. at ¶¶ 52–111.) But neither have alleged concrete travel plans in the next month, which would allow sufficient time for the parties to brief, and the Court to consider, whether preliminary injunctive relief is warranted in this case.

Oxfam's allegations similarly do not present the type of irreparable harm that warrants the extraordinary remedy of a temporary restraining order. It alleges that it is being irreparably harmed by the Order because "[m]any people who bear witness on Oxfam's behalf about their experiences and conditions in their countries must come to the United States to do so because they cannot safely or legally speak publicly at home," along with their First Amendment rights. (Am. Compl. at ¶¶ 119.) However, the Supreme Court has already addressed this sort of claim, concluding that there is very limited review of them. *See Kleindienst*, 408 U.S. at 769–70. Moreover, Oxfam does not allege that any individual has an intention to come to the United States in the next month.[1]

---

[1] Defendants recognize that the Court today allowed the intervention of the Commonwealth of Massachusetts and the University of Massachusetts. (ECF No. 44.) The Intervenor-Plaintiffs' proposed complaint similarly does not present specific allegations of the types of immediate concerns that would warrant continuation of the temporary restraining order (Proposed Compl., ECF No. 25-1, at ¶¶ 41–46.) Indeed, many of the Intervenor-Plaintiffs' allegations address claimed

(Am. Compl. ¶¶ 117-118.) Even if there were such a person, there is no reason that the individuals Oxfam wishes to bring to the United States for speeches and meetings—or even briefings—cannot appear via videoconference or telephone. Although Oxfam may certainly prefer that certain individuals be physically present within the United States, modern technology such as the telephone, international mail, electronic mail, and video conferencing would all accomplish the ends that Oxfam now purportedly seek—especially when the claim most relevant to it is one regarding the freedom of speech. At the very least, that mitigates the harm sufficiently to resolve these issues on a preliminary injunction schedule, rather than tomorrow. As none of the Plaintiffs has alleged non-speculative harm in the immediate future, the reasons for issuance of the Temporary restraining order no longer exist, and the Court should allow it to expire.

## CONCLUSION

As there is no potential irreparable harm pending fuller consideration of whether preliminary injunctive relief is warranted, good cause does not exist to continue the Temporary Restraining Order for any period of time.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

AUGUST FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

GISELA M. WESTWATER
Assistant Director

---

restrictions of immigration benefits and concerns that are not at all addressed by the TRO. (*See id.* ¶¶ 37–40.)

                                              KATHERINE J. SHINNERS
                                              Trial Attorney

                                    By: */s/ Joshua S. Press*
                                         JOSHUA S. PRESS
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division
                                         Office of Immigration Litigation
                                         District Court Section

Dated: February 2, 2017                     *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

     I hereby certify that on February 2, 2017, I electronically filed the foregoing OPPOSITION TO CONTINUATION OF TEMPORARY RESTRAINING ORDER with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link of this document to the attorneys of record.

DATED: February 2, 2017

                                        By: */s/ Joshua S. Press*
                                         JOSHUA S. PRESS
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division