# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

ARGHAVAN LOUHGHALAM and
MAZDAK POURABDOLLAH TOOTKABONI
    *Plaintiff-Petitioners,*

FATEMEH YAGHOUBI MOGHADAM,
BABAK YAGHOUBI MOGHADAM,
ALI SANIE, ZAHRASADAT MIRRAZI
RENANI, LEILY AMIRSARDARY, and
OXFAM AMERICA, INC.
    *Plaintiffs,*

and

COMMONWEALTH OF MASSACHUSETTS
and UNIVERSITY OF MASSACHUSETTS,
    *Plaintiff-Intervenors,*

v.

DONALD TRUMP, President of the United
States; U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"); U.S. CUSTOMS AND
BORDER PROTECTION ("CBP"); JOHN
KELLY, Secretary of DHS; KEVIN K.
MCALEENAN, Acting Commissioner of CBP;
and WILLIAM MOHALLEY, Boston Field
Director, CBP,
    *Defendants.*

No.17-cv-10154-NMG

## PLAINTIFF-INTERVENORS' MEMORANDUM IN
## SUPPORT OF EXTENDING TEMPORARY RESTRAINING ORDER

This case was initiated in the late hours of January 28, 2017, when two lawful permanent residents of the United States—professors at the University of Massachusetts—were detained by U.S. Customs and Border Protection upon their arrival at Logan International Airport pursuant to an Executive Order issued the day before. This Court issued a temporary restraining order early on January 29, 2017, enjoining the Defendants from removing or detaining, "by any manner or

means," individuals based solely on the Executive Order. This Court's order was one of three restraining orders entered by federal courts immediately following issuance of the Executive Order, each premised on a finding of a strong likelihood that the Executive Order violates the constitutional rights of the various plaintiffs and others similarly situated.[1] A fourth restraining order was issued just two days ago.[2] Each of these orders remains in place and is expected to continue in place until courts rule on the plaintiffs' motions for further injunctive relief. As in New York, Virginia, and California, the Executive Order continues to inflict and threaten grave harms in Massachusetts, and the need for emergency relief thus continues.

For all of the reasons advanced by Plaintiffs and Plaintiff-Petitioners in support of extending the temporary restraining order in this case, the harm to these parties and others similarly situated is immediate and irreparable. Moreover, beyond those particular individuals, broader harms to the Commonwealth, its institutions, and its residents persist each day the Executive Order is in place. The Executive Order harms the Commonwealth as an employer, educator, service-provider, and tourist destination, as well as a vibrant, international economy.

With the Executive Order in effect, thousands of people in the Commonwealth cannot travel outside of the country (or, in some cases, return to the country from abroad), and they cannot safely make travels plans. Thousands of people face considerable uncertainty as to their legal status even within the United States. The effects already are being felt and will only worsen without the protections currently in place through the temporary restraining order. It is little comfort to these residents that the United States now says, after days of vague and

---

[1] *See Aziz v. Trump et al.*, No. 17-cv-00116 (E.D. Va. Jan. 28, 2017) (temporary restraining order currently in place); *Darweesh v. Trump et al.*, No. 17-cv-00480 (AMD) (E.D.N.Y. Jan. 28, 2017) (temporary restraining order extended until February 21, 2017).

[2] *See Mohammed v. United States et al.*, No. 17-cv-00786-AB (PLAx) (C.D. Cal. Jan. 31, 2017) (temporary restraining order extended until hearing on February 10, 2017).

conflicting statements from various agencies, that it will not enforce the Executive Order with respect to lawful permanent residents. The Executive Order has not been amended or rescinded and continues to apply on its face to lawful permanent residents. Furthermore, the fate of Massachusetts residents with visas and other statuses remains unclear at best. These residents cannot make meaningful plans for their lives, their work, or their education with the Executive Order threatening their continued ability to reside lawfully in the country. The schools, hospitals, businesses, and other institutions that employ or enroll these residents are likewise plagued by uncertainty. That not all of these residents have come forward to submit evidence to the Court of their immediate travel plans misses the point. They already are being harmed and will only be further harmed if the temporary restraining order is lifted. The Commonwealth has intervened in this case on behalf of the broader public interest for this very reason.

The balance of harms at issue here and the public interest thus weigh decidedly in favor of continued emergency relief.

### A. The University of Massachusetts is Suffering Immediate and Ongoing Harm

In its Complaint and in the attached declarations, the Commonwealth details the particular harms that the Executive Order has inflicted and will continue to inflict on the University of Massachusetts system ("UMass").

UMass depends upon the unique and specialized knowledge and experience of foreign nationals, including those from the seven affected countries, as scholars, teachers, employees, and contributors to its academic communities, including its medical school. By limiting the ability of individuals to leave the United States and return as otherwise permitted by federal law—and as contemplated when they initially were employed or enrolled—the Executive Order deprives UMass of the full benefit of their contributions.

UMass has approximately 300 students who are nationals of the affected countries currently enrolled in its graduate and undergraduate programs, including lawful permanent residents, refugees, and asylees, as well as students in non-immigrant visa classifications. UMass also employs approximately 160 faculty members, researchers, and staff from the affected countries. These include employees who are lawful permanent residents like Petitioners Tootkaboni and Louhghalam, as well as approximately 120 employees with visas conferring temporary, lawful status.

These students, faculty members, researchers, clinical professionals, and other employees who are adversely affected by the Executive Order are effectively unable to leave the United States without risking the inability to return to work or school. They are thus unable to attend academic and professional conferences, seminars, and other academic gatherings outside of the United States, which interferes with their academic work and frustrates the mission of the university. Moreover, with the Executive Order in effect, UMass will also be frustrated in its ongoing efforts to hire and retain employees and to recruit and enroll students. The disruption to UMass's operations—even for a period of weeks—will be significant.

### B. The Executive Order Will Inflict Broad Harms Statewide

The harms that UMass is experiencing are just a fraction of the tremendous harms that the Executive Order will inflict across the Commonwealth. As demonstrated by the additional attached declarations, many individuals, municipalities, schools, businesses, and other organizations across the state already are experiencing adverse effects from the Executive Order and will only suffer further if the temporary restraining order is lifted. As with UMass, these declarations—from the City of Boston, Trip Advisor, LLC, Boston Architectural College, The Broad Institute, Nano-C, Inc., the Boston Bar Association, and the Massachusetts Bar

Association—represent only a small sampling of ongoing and imminent future harms across Massachusetts. But they nevertheless convey some sense of the scope and gravity of those harms.

### C. The Public Interest Thus Weighs in Favor of Uninterrupted Injunctive Relief

The public interest weighs in favor of uninterrupted injunctive relief. By unnecessarily and unconstitutionally singling out individuals who are nationals of the affected countries and impeding or precluding them from traveling, immigrating, or returning to work or school in Massachusetts, the Executive Order will financially harm the Commonwealth, its economy, and its people. Until now, the Commonwealth has been an attractive destination for companies in the life sciences, technology, finance, health care, and other industries, as well as an attractive destination for students, scholars, tourists, and entrepreneurs. The Executive Order will reduce investment and industry in the Commonwealth; decrease the number of international conferences and meetings that are held here, along with the associated spending by visitors; and reduce travel by students, scholars, and tourists, all of whom also spend money in the Commonwealth during their stays here. All of these outcomes will harm the Commonwealth's economy as a whole, including by decreasing tax and other revenues.

Equally as important, the Commonwealth has a sovereign interest in protecting the health, safety, and well-being of all its residents, including against the special harms caused by discrimination based on religion and national origin. The Executive Order prevents the Commonwealth from promoting and enforcing a regime of non-discrimination under its state constitution and laws. In fact, it effectively mandates discrimination, and thus conflicts with the Commonwealth's historic protection of civil rights and religious freedom. It also labels many Massachusetts residents as threats to our society simply on the basis of their religion or nation of

origin, and thus unfairly and unreasonably casts a shadow of stigma and fear on many of our immigrant communities.  These harms are as real and significant as the operational and financial harms facing the Commonwealth and its residents.

*****

For the foregoing reasons, and in the public interest of all residents of the Commonwealth, Plaintiff-Intervenors urge the Court to extend the temporary restraining order currently in place while the parties fully brief and argue the merits of a preliminary injunction.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS
UNIVERSITY OF MASSACHUSETTS

ATTORNEY GENERAL
MAURA HEALEY


*/s/ Genevieve C. Nadeau*
Elizabeth N. Dewar, BBO# 680722
Genevieve C. Nadeau, BBO# 677566
Jonathan B. Miller, BBO# 663012
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
617-963-2204 (Dewar)
617-963-2121 (Nadeau)
617-963-2073 (Miller)
Bessie.Dewar@state.ma.us
Genevieve.Nadeau@state.ma.us
Jonathan.Miller@state.ma.us

February 2, 2017

## **CERTIFICATE OF SERVICE**

    I, Genevieve C. Nadeau, hereby certify that a true copy of the above document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: February 2, 2017    */s/ Genevieve C. Nadeau*
                                                         Genevieve C. Nadeau