**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

MAZDAK POURABDOLLAH TOOTKABONI and ARGHAVAN LOUHGHALAM,

    *Plaintiff-Petitioners,*

FATEMEH YAGHOUBI MOGHADAM, BABAK YAGHOUBI MOGHADAM, ALI SANIE, ZAHRASADAT MIRRAZI RENANI, LEILY AMIRSARDARY, and OXFAM AMERICA, INC.

    *Plaintiffs,*

  v.

DONALD TRUMP, President of the United States, et al.; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; and WILLIAM MOHALLEY, Boston Field Director, CBP,

    *Defendants.*

No.17-cv-10154-NMG

**[PROPOSED] PLAINTIFF-PETITIONERS' AND PLAINTIFFS'
RESPONSE IN SUPPORT OF CONTINUATION OF TEMPORARY RESTRAINING
ORDER AND TO SET BRIEFING SCHEDULE FOR
EXPEDITED PRELIMINARY INJUNCTION**

    President Donald Trump's January 27, 2017 Executive Order banning individuals from seven majority-Muslim countries ("EO")[1] already is causing ongoing harm to Massachusetts

---

[1] The EO declares "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in Section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and suspends entry into the United States of nationals from those counties for 90 days, with narrow exceptions not relevant here. The seven countries that the United States government has determined fit the criteria in 8 U.S.C. § 1187(a)(12) are: Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen. According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO. *See* Ex. A.

residents, and to the companies, hospitals, universities, non-profits, and all other forms of commerce that operate in the Commonwealth. Across the country, numerous courts have made preliminary findings that the EO is likely unlawful and on that basis have issued temporary restraining orders or other preliminary relief.[2]

Plaintiff - Petitioners Arghavan Louhghalam and Mazdak Pourabdollah Tootkaboni, and Plaintiffs Fatemeh Yaghoubi Moghadam, Babak Yaghoubi Moghadam, Ali Sanie, Zahrasadat Mirrazi Renani, Leily Amirsardary, and Oxfam America, Inc. (collectively, "Plaintiffs") respectfully submit that the Temporary Restraining Order entered in this action on January 29, 2017 should likewise remain intact while the parties brief and argue a forthcoming motion for a preliminary injunction.[3]

This case began on January 28, 2017, when two lawful permanent residents filed their petition for habeas corpus and a complaint to challenge their unlawful detention at Logan Airport under the EO. *See* ECF No. 1. On January 29, 2017 this Court issued a temporary restraining order ("TRO"), following the appearance and argument by counsel to Plaintiffs and Defendants. *See* ECF No. 6. The TRO restored the status quo existing prior to the EO, by ordering the federal government (including all of its "officers, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them") to conduct itself as if no EO had issued, and to take steps to notify affected parties, including airlines, of the same.

The Court based the TRO on two findings of fact, which are as controlling today as they were less than a week ago when the TRO issued:

- "Absent a stay of removal, petitioners and others similarly situated, including lawful permanent residents, citizens, visa-holders, approved refugees and other individuals from nations who are subject to the January 27, 2017 Executive Order, are likely to suffer irreparable harm." *Id.* ¶ 2.

---

[2] *See Darweesh v. Trump,* 1:17-cv-00480 (E.D.N.Y.); *Vayeghan v. Kelly*, 17-0702 (C.D. Cal.); *Mohammed v. Trump,* 2:17-cv-00786 (C.D. Cal.); *see also Aziz v. Trump,* 1:17-cv-116 (E.D. Va.) (granting TRO without specifically addressing likelihood of success).

[3] *See* Fed. R. Civ. P. 65(b)(2); *State of Me. v. Fri*., 483 F.2d. 439, 440 (1st Cir. 1973); 11 Wright and Miller, Federal Practice & Procedure: Civil § 2953 at 521 (1973).

- "The balance of harms favors the issuance of this temporary restraining order and its issuance is in the public interest." *Id.* ¶ 3.

Notably, each of the individual Plaintiffs in this action is lawfully in the United States.[4] Each followed the process established by the federal government for lawful entry, which requires their thorough background check and vetting, after which a United States Consular Office granted them visas to enter and live in the country. Plaintiffs include a Massachusetts small business owner, two professors at University of Massachusetts, an engineer employed at Becton Dickinson and his sister, an injured man who requires medical treatment by his doctor in Iran, and a linguistics Ph.D. student at University of Massachusetts. *See* Amended Complaint (Compl.) at ¶¶ 52-111. None of the Plaintiffs pose any threat of terrorist activity and none of them has any criminal record in Iran or the United States. All are law-abiding, productive individuals, and Defendants have not introduced any evidence to the contrary.

Plaintiffs allege specific, compelling reasons to travel internationally during the 90-day ban, and explain why their inability to do so is causing irreparable harm. *See id.*[5] If they were not Iranian nationals, and instead nationals of any country in the world other than the seven Muslim-majority countries subject to the EO, they still would be legally entitled to conduct travel abroad, knowing that they could return to the United States.

Oxfam America, Inc. ("Oxfam") is also a plaintiff. Oxfam is part of a 19-member confederation of non-governmental development organizations—Oxfam International—dedicated to creating lasting solutions to hunger, poverty, and social injustice through long-term partnerships with poor communities around the world, and by responding to life-threatening emergencies. Oxfam operates in five of the seven countries affected by the EO. It is essential for Oxfam's business that its staff members and civil society partners are able to travel from the affected countries to the U.S. Many people who bear witness on Oxfam's behalf about their

---

[4]The Amended Complaint filed on January 31, 2017 added six (6) individual Plaintiffs and Oxfam. *See* ECF No. 28.
[5]*See also* Affidavit of Mazdak Pourabdollah Tootkaboni, signed February 2, 2017, attached hereto as Exhibit B; Affidavit of Babak Yaghoubi Moghadam, signed February 2, 2017, attached hereto as Exhibit C; Affidavit of Ali Sanie, signed February 2, 2017, attached hereto as Exhibit D; Affidavit of Zahrasadat Mirrazi Renani, signed February 2, 2017, attached hereto as Exhibit E; Affidavit of Leily Amirsardary, signed February 2, 2017, attached hereto as Exhibit F; Affidavit of Raymond C. Offenheiser, signed February 2, 2017, attached hereto as Exhibit G.

experiences and conditions in their countries must come to the U.S. to do so because they cannot safely or legally speak publicly at home.

Oxfam currently expects that several people will be traveling to the U.S. from the affected countries within the next 90 days. Those expected to travel include a representative of a partner organization in Syria, who has been invited to speak at public events in mid-March marking six years since the start of the Syria crisis, to raise awareness and suggest potential solutions to government officials, the media, and the public. Application of the EO will therefore irreparably impair Oxfam's ability to advocate on its behalf and on behalf of the people Oxfam assists in the developing world.[6]

## ARGUMENT

**I.    Extending the Temporary Restraining Order Is Appropriate Where, As Here, The Movants Are Likely To Succeed On The Merits And The Balance Of Harms Weighs In Favor Of The Movants.**

The TRO is properly based on the four factor determination of Plaintiffs' entitlement to equitable relief. *See*, *e.g., Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 482 (1st Cir. 2009) (citing *Waldron v. George Weston Bakeries, Inc.*, 570 F.3d 5, 9 (1st Cir. 2009); *178 Lowell St. Operating Co.*, *LLC v. Nichols*, 152 F. Supp. 3d 47, 53 (D. Mass. 2016). Since the TRO issued, the EO remains unchanged, and its devastating effect on the constitutional rights of Plaintiffs continues.[7]

   A.    **Plaintiffs have demonstrated a likelihood of success in their claims.**

The Amended Complaint, supported by the sworn declarations submitted with this Memorandum at Exhibits B-G, establish a strong likelihood that Plaintiffs will succeed on the

---

[6] *See* Affidavit of Raymond C. Offenheiser, signed February 2, 2017, attached hereto as Exhibit G.
[7] The February 1, 2017 White House Memo entitled "Authoritative Guidance on Executive Order Entitled 'Protecting the Nation from Foreign Terrorist Entry into the United States," ECF No. 50-1 (February 1 Memo)—which purports to interpret the EO to exclude lawful permanent residents—neither officially amends the EO nor addresses the two individual Plaintiffs who are not lawful permanent residents.

4

merits of all of their claims.[8]  Plaintiffs address only a few examples here, namely, the Equal Protection Claim (Count I) and the First Amendment Claim (Count V).

        1.      <u>Probability of Success on the Equal Protection Claims</u>

The individual Plaintiffs have demonstrated that they are likely to succeed on the Equal Protection claims alleged in Count I of the Amended Complaint.  In addition to discriminating on its face on the basis of Plaintiffs' country of origin, the EO also discriminates on the basis of religion.  In fact, this is the rare case in which the government has publicly disclosed its intention to discriminate against Plaintiffs based on their religion.  President Trump has publicly stated his support for a "total and complete shutdown of Muslims entering the United States," reportedly directed his advisors to implement that "shutdown" using the language of the law, and then enacted the resulting prohibition on seven majority-Muslim countries just one week after coming into office.  *See* Amended Complaint at ¶¶ 29-30.  The EO not only discriminates against Muslims; through its provisions favoring refugee admission of religious minorities, the EO also implements President Trump's policy to favor Christians over Muslims from Muslim-majority countries.  *See* Amended Complaint at ¶ 31.

The Fifth Amendment's Equal Protection Clause prohibits classifications on the basis of national origin and on religion—including laws or policies enacted with discriminatory intent or applied in a discriminatory manner—unless narrowly tailored to serve a compelling government interest. *Larson v. Valente,* 456 U.S. 228, 244, 246 (1982); *Anderson ex rel. Dowd v. City of Boston,* 375 F.3d 71, 82-83 (1st Cir. 2004) (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265 (1977)); *Rubinovitz v. Rogato,* 60 F.3d 906, 910 (1st Cir. 1995).

The EO is not narrowly tailored to serve a compelling interest.  First, it does not serve a compelling interest—and, in fact, does not serve a legitimate interest at all—because its purpose

---

[8]The individual Plaintiffs also have demonstrated that they are also likely to succeed on the Establishment Clause claims (Count II), Due Process claims (Count III) and APA claims (Count IV) for the reasons alleged in the Amended Complaint.

is to discriminate against Muslims, not to promote security. In fact, because its purpose was to implement a discriminatory campaign promise, the EO was developed without the advice of the agencies responsible for homeland security, defense, and the admission of immigrants. Amended Complaint at ¶ 32. Second, even if that were not the case, the EO is rationally related, much less narrowly tailored, to serve any interest in security. It applies a blanket prohibition affecting tens of thousands of visa holders who have already been thoroughly vetted by the U.S. government, without any reason to believe that any of them pose a risk to national security.

| Foreign State | *Nonimmigrant* Visas Issued in FY2015 |
|---|---|
| **Iran** | 35,363 |
| **Iraq** | 13,499 |
| **Syria** | 10,061 |
| **Yemen** | 4,525 |
| **Sudan** | 5,080 |
| **Libya** | 3,303 |
| **Somalia** | 331 |
|  | **72,162** |

*Figure 1: See U.S. State Department Detail Table*
*"Nonimmigrant Visa Issuances by Visa Class and by Nationality"[9]*

Individual Plaintiffs therefore are likely to succeed in their claim that the EO violates their equal protection right to be free from religious and national origin discrimination.

---

[9] See Glenn Kessler, *The number of people affected by Trump's travel ban: About 90,000*, Wash Post. (Jan. 30, 2017).

2.   Probability of Success on Oxfam's First Amendment Claims

Plaintiff Oxfam has demonstrated that it is likely to succeed on the First Amendment Claims alleged in Count V of the Amended Complaint.  The First Amendment protects the right "to receive information and ideas." *Kleindienst v. Mandel,* 408 U.S. 753, 763 (1972) (quotation omitted). This includes to the right to "hear, speak, and debate with" non-immigrants and lawful permanent residents. *American Academy of Religion v. Napolitano,* 573 F.3d 115, 117 (2d Cir. 2009) (quotation marks omitted); *American Sociological Ass'n v. Chertoff,* 588 F. Supp. 2d 166, 169 (D. Mass 2008).  The preservation of this right is particularly important for academic, research, and policy organizations, whose very missions require a robust exchange of ideas among diverse groups of people.  *Cf. Kleindienst*, 408 U.S. at 763.  The First Amendment also protects "the right to petition the government for redress." U.S. CONST. Amend. I.

The EO significantly burdens Oxfam's First Amendment rights.  In-person meetings with individuals from the affected countries enable Oxfam to receive critical information from their overseas colleagues and are essential to its ability to carry out its activities in the United States. Ex G ¶6.  Many of these individuals could not share this information remotely "because they cannot safely or legally speak publicly at home." *Id.* ¶10.  In addition, international visits are critical to the organization because they "provide opportunities for people who are intimately familiar with country conditions to bear witness on Oxfam's behalf in direct communication with members of the organization's key American constituencies," including "lawmakers in the United States' House of Representatives and Senate and members of the executive branch." *Id.*¶¶ 6-7.  For example, right before President Trump signed the EO, Oxfam was "requested to send [its] Country Director from one of the listed countries to Washington to brief on a key, time-sensitive issue under consideration across the White House, the Department of the Treasury, and the Department of State."  *Id.* ¶8.  "To comply with the United States Government's own timeline for action," the meeting was to be held within the 90-day period of the visa ban." Because of the EO, "that meeting will now be impossible." *Id.*

7

The EO therefore burdens Oxfam's right to both "hear, speak and debate with" non-immigrants and to petition the government. It is neither substantially related to an important government interest, nor narrowly tailored to a compelling government interest. Indeed, the EO is not even justified by any facially legitimate and bona fide reason. Consequently, Oxfam is likely to succeed in its claim that Defendants' enforcement of the EO and exclusion of Oxfam's employees and affiliates residing and working in the affected countries violates the First Amendment rights of Oxfam, its employees, and affiliated representatives and professionals.

### B. Plaintiffs will suffer irreparable harm if the TRO is not extended.

Enforcement of the Executive Order will inflict irreparable harm on plaintiffs. First, the Executive Order does not disclaim the authority to re-detain Arghavan Louhghalam and Mazdak Pourabdollah Tootkaboni, without notice, at any time. Second, the Executive Order will prevent plaintiffs from undertaking international travel to attend to important family, health, and career needs.[10] Plaintiffs Fatemeh and Babak Yaghoubi Moghadam will be unable to visit their brother in Iran, who recently suffered a heart attack, while Plaintiff Zahra Renani will be unable to comfort her parents in the wake of her brother's tragically sudden death in Iran. Compl., ¶¶ 70-72, 78-80; Ex. E, ¶ 8. Plaintiff Ali Sanie will be denied the medical care he needs to return to a normal life. Ex. D ¶¶ 3-5, 7-9. And plaintiff Leily Amirsardary will be unable to grow her business. Ex. F ¶¶ 8-11.

Even if these plaintiffs had no uniquely urgent plans to leave and return to the United States, they still would be irreparably harmed by the Executive Order. If one of their family members suddenly has a health crisis overseas, if a career suddenly requires international travel, or if an educational or cultural opportunity suddenly presents itself, each plaintiff will have to

---

[10]The various press releases and other clarifications issued by the government since January 27 cannot moot this case because they do not amend the EO itself, and thus do not rescind the *authority* it purports to create. *United States v. W.T. Grant Co.*, 345 U.S. 629, 630 (1961). ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case[.]"). Moreover, the February 1 memo does not alleviate the harm, as plaintiffs "have seen the government quickly shift what it has been saying numerous times over the past week" and "feel that the U.S. government could change its position at any time." Ex. C ¶8; *see also* Ex. B ¶8. If anything, this scramble to cabin the chaos unleashed by the EO highlights the need for temporary injunctive relief; unlike a press release or memo issued by a party in litigation, a TRO is more capable of ensuring predictable behavior while a preliminary injunction motion is litigated.

8

choose between staying in the United States or leaving without any hope of return. Indeed, that is why noncitizens work so hard to secure visas, and why the government so thoroughly vets them: *visas deliver the freedom to leave and come back*. To say that the withdrawal of that right is not irreparably harmful unless people had imminent plans to leave would be like saying that house arrest does not irreparably harm someone who had prior plans to stay home for the day.

Oxfam also will be irreparably harmed. Precisely because it works to help people in countries hardest hit by poverty and life-threatening hardship, its work *requires* bringing in people from around the world to strategize, problem-solve, and petition public officials in the United States to take concrete steps to alleviate suffering in other countries. Ex. G ¶¶ 6-11. These meetings often must be in person because "[m]any people who bear witness on [Oxfam's] behalf about their experiences and conditions in their countries must come to the United States to do so because they cannot safely or legally speak publicly at home." *Id.* ¶ 10. By prohibiting people in the banned countries from coming to the United States, the Executive Order makes it immeasurably harder for Oxfam to address the unique needs of people in those countries and to persuade public officials that those people deserve even more developmental assistance, education funding and humanitarian relief – not baseless targeting and marginalization.

Finally, extending the TRO is necessary to prevent irreparable harm to people all over the world.[11] Just today, the airline Lufthansa issued this alert:

> Admission will be refused to visitors with a passport issued by 7 countries - Iran, Iraq, Libya, Somalia, Sudan, Syria and Yemen - and holding a valid immigrant or non-immigrant visa for the US.
>
> \* \* \*
>
> Due to a decision (Temporary Restraint Order) by the District Court in Massachusetts, the above mentioned Order is suspended on flights to BOS for the time being until

---

[11] Because the document purportedly issued by Edward J. Ramotowski on January 27, 2017 stating "I hereby revoke all valid nonimmigrant and immigrant visas of nationals of Iraq, Iran, Libya, Somalia, Sudan, Syria and Yemen" was issued "in implementation of section 3(c)" of the EO, any reliance on the letter would also violate the TRO. ECF No. 23-1.

9

February 5th, 2017. All passengers with valid travel documents are eligible to board on LH-flights to BOS.[12]

If the TRO is lifted, this beacon of hope will instantaneously disappear.  People who had been issued visas by the U.S. government may be stranded overseas or at connecting destinations. Confusion will be rampant.  People might even be stuck at airports, caught between the international location they have departed and a country that will suddenly no longer accept them.

## II.     The balance of harm weighs in plaintiffs' favor.

The events of the last week demonstrate that the balance of harms overwhelmingly warrants extending the TRO.  It is, in fact, a case study in imposing harm on people and organizations for no good reason.

Notwithstanding the TRO's existence and the relief that has been ordered in other cases, the government has apparently succeeded in implementing the Executive Order to some extent. Some people have been detained at airports.  Others, including the five individual plaintiffs added to the amended complaint, can no longer make plans to leave the country. *See* Ex. B ¶6; Ex. C ¶5; Ex. D ¶9; Ex. E ¶11; Ex. F ¶11.  Many noncitizens abroad have been prevented from returning to their homes, jobs, and lives in the United States.[13]   And businesses and organizations, including Oxfam, have had their work cut off at the legs.  *See* Ex. G ¶ 11.

On the other side of the ledger, there is essentially nothing.  The government has not identified *any* harm that has been abated by abruptly stranding overseas scores of people who seek to return to their jobs and studies in the United States, preventing the overseas travel of many more who already live and work in this country, and keeping out other previously vetted travelers. Because the EO inflicts senseless harm on thousands of people and the institutions, and brings no known benefits, the balance of harms weighs heavily in Plaintiffs' favor.

---

[12] http://www.lufthansa.com/de/en/Travel-information (last visited Feb. 2, 2017).
[13] *See, e.g.,* Thomas Erdbrink, *Unable to Enter U.S., and Still Stranded Abroad*, N.Y. Times (Jan. 31, 2017).

### III.    The TRO is in the public interest.

The public interest will not be served by allowing confusion, chaos, and suffering to continue unabated while this case unfolds.  Together with this motion, Plaintiffs and the Commonwealth are submitting declarations that describe just some of the ways the public will be harmed if temporary relief is not extended.  These declarations demonstrate that the EO irreparably harms not only individuals, but also the critical educational, business, technology, and policy institutions that depend to a large extent on the talents of individuals from around the world, including the seven countries impacted by the EO.  *See* Ex. G (Oxfam); ECF No. 52 (University of Massachusetts, University of Massachusetts Medical School, Boston College, Boston Architectural College, TripAdvisor; Nano-C, Inc., The Broad Institute).  Because stranding individuals overseas and preventing the back-and-forth travel of those who live and work in the United States has created chaos and impeded the day-to-day function of vital sectors of civil society and the economy, extending the TRO is in the public interest.

### CONCLUSION

Accordingly, for all of the reasons detailed above, Plaintiffs respectfully request that the TRO remain intact while the parties brief and argue a forthcoming motion for a preliminary injunction.

Respectfully submitted,
/s/ Susan Church
Susan Church (BBO #639306)
Derege Demissie (BBO #637544)
Heather Yountz (BBO # 669770)
DEMISSIE & CHURCH
929 Mass. Ave., Suite 1
Cambridge, MA 02139
(617) 354-3944

12

/s/ Michael S. Gardener
Michael S. Gardener (BBO #185040)
Elizabeth B. Burnett (BBO #066120)
Peter A. Biagetti (BBO #042310)
Susan M. Finegan (BBO #559156)
Andrew N. Nathanson (BBO #548684)
Susan J. Cohen (BBO #546482)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
smfinegan@mintz.com
Date: February 2, 2017

/s/ Kerry E. Doyle
Kerry E. Doyle (BBO #565648)
GRAVES & DOYLE
100 State Street, 9th Floor
Boston, MA 02109
(617) 216-1248

/s/ Matthew R. Segal
Matthew R. Segal (BBO #654489)
Sarah Wunsch (BBO #548767)
Jessie J. Rossman (BBO #670685)
Laura Rotolo (BBO #665247)
Adriana Lafaille (BBO #680210)
ACLU FOUNDATION OF
MASSACHUSETTS
211 Congress Street
Boston, MA 02110
(617) 482-3170
msegal@aclum.org

Date: February 3, 2017

**CERTIFICATE OF SERVICE**

I, Michael S. Gardener, hereby certify that the foregoing document will be filed through the ECF system on February 3, 2017, which will cause counsel for all parties to be electronically served.

                                 Respectfully submitted,

                                 /s/ Michael S. Gardener
                                 Michael S. Gardener

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1**

I, Matthew R. Segal, hereby certify that I have conferred with counsel for the defendants in an effort to resolve or narrow the issues raised by this motion. Defendants oppose the extension of the TRO.

                                 Respectfully submitted,
                                 /s/ Matthew R. Segal
                                 Matthew R. Segal